Grant P. **KIMBALL**, Plaintiff-Appellant,

v.

**COMMANDANT TWELFTH NAVAL DISTRICT**, San Francisco, California, Does I Through XX, Inclusive, Defendants-Appellees.

No. 24977.

United States Court of Appeals, Ninth Circuit.

Feb. 25, 1970.

R. Jay Engel (argued), Anne F. Cumings (argued), San Francisco, Cal., for plaintiff-appellant.

Jerry K. Cimmet (argued), Asst. U. S. Atty., James L. Browning, U. S. Atty., San Francisco, Cal., for defendants-appellees.

Before BARNES, MERRILL and CARTER, Circuit Judges.

BARNES, Circuit Judge.

Appellant sought a temporary restraining order and further injunctive relief barring his removal from the Northern District of California pending action by the Navy on his request for in-service conscientious objector classification (I-AO). Initially the case was heard as an ex parte matter on October 16, 1969, but after a brief recess an assistant United States attorney appeared for the appellee and the cause was fully argued by both sides. (R.T. 5–27) The district judge denied all relief with the following statement: "Ordered after hearing argument by respective counsel the motion for temporary restraining (sic) order, Denied." (C.T. 9A)

This appeal was filed under 28 U.S.C. § 1291. We hold for reasons that we discuss, *post*, that the denial of injunctive relief was a "final decision" within the purview of section 1291, and we affirm the judgment of the district court.

I. *Jurisdiction of This Court*

In the interests of avoiding uneconomical piecemeal appellate review, it has generally been held that appeal does not lie from the denial of an application for a temporary restraining order. (*See e. g.*, Chandler v. Garrison, 394 F.2d 828 (5th Cir. 1967).) Nevertheless, under certain circumstances the denial of temporary or preliminary relief may decide the merits of a case. In such a situation nothing is gained by requiring an appellant to go through the motions of re-applying for permanent injunctive relief in the trial court. We think that this is such a case.

Commentators have noted the difficulty that courts have had in characterizing what are final and non-final orders. In general a practical rather than technical construction has been favored.

"In the difficult borderline cases, the line between a final and interlocutory order is not always clear. Because of this, the final judgment rule lacks both 'finality' and 'certainty.' Practically every general principle concerning finality is subject to so many competing principles that oftentimes the application of the 'proper' rule simply cannot be determined with any degree of certainty. * * *

"However, the Supreme Court has recently stated: ' * * * our cases long have recognized that whether a ruling is "final" within the meaning of § 1291 is frequently so close a question that decision of that issue either way can be supported with equally forceful arguments, and that it is impossible to devise a formula to resolve all marginal cases coming within what might well be called the "twilight zone" of finality. Because of this difficulty this Court has held that the requirement of finality is to be given a "practical rather than a technical construction."' Gillespie v. United States Steel Corp., 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964)." 7A Moore's Federal Practice § 1291 pp. JC419, 420.

The *Gillespie* Court found the prime considerations in determining whether a final order had been entered were the following:

"[I]n deciding the question of finality the most important competing considerations are 'the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other.'" Gillespie v. U. S. Steel Corp., *supra* at 152, 153, 85 S.Ct. at 311.

We have read the record of the proceedings in the court below and we are convinced that the trial judge decided the merits of the case after hearing thorough argument by both sides. Appellant's orders overseas were originally stayed pending this appeal, but on December 18, 1969, a panel of this court terminated the stay.

█ We think there is no useful purpose to be served by remanding the case for another hearing on essentially the same issues, which would be before the court again, if *permanent* rather than *temporary* relief were to be sought. In short, we think denial of *all* relief was implicit in the trial judge's denial of a temporary restraining order. Therefore, we hold that the lower court's action was appealable, and that this court has jurisdiction to hear this appeal.

II. *Appellant Has No Right to Remain in the United States Pending the Determination of His Request for Conscientious Objector Status.*

The essence of appellant's argument is that he will be denied his right to "administrative due process" if he is required to go to Vietnam, as he was ordered on October 7, 1969, pending determination of his application for conscientious objector status, which was filed on September 28, 1969. We can find no case authority or defense or Naval Regulation that supports this novel proposition.

Appellant cites the cases of United States ex rel. Brooks v. Clifford, 409 F. 2d 700 (4th Cir. 1969), Smith v. Resor, 406 F.2d 141 (2d Cir. 1969) and Brown v. McNamara, 387 F.2d 150 (3rd Cir. 1967) as holding that "the United States cannot make administrative due process conditional, nor can they grant all or part of it in a discretionary manner." (App. Br. 8)

While these cases did deal with administrative due process, their specific holding is best exemplified by the following quotation from United States ex rel. Brooks v. Clifford, *supra* at 706: "* * * regulations once issued must be followed scrupulously." We agree, but we can find no Department of Defense or Naval Regulation that requires the Navy to postpone overseas assignment of its personnel pending the determination of a request for conscientious objector status.[1]

Department of Defense Directive 1300.6 part VI provides in part as follows:

"B. With respect to persons who have already served a portion of their obligated service who request discharge or noncombatant service for conscientious objection, the following actions will be taken:

1. * * *

2. Pending decision on the case and to the extent practicable the person will be employed in duties which involve the minimum conflict with his asserted beliefs. * * * *"

█ We can find no language in this or any other part of the Directive that even suggests that a serviceman must be kept in the United States pending action on his request for conscientious objector classification. The Second Circuit cases cited by appellant—United States ex rel. Mankiewicz v. Ray, 399 F.2d 900 (2d Cir. 1968) and Hammond v. Lanfest, 398 F.2d 705 (2d Cir. 1968)

---

1. *Army* Regulation 635-20 requires retention of a soldier in his unit pending final determination of a request for conscientious objector status. The Navy has no such regulation. We reject appellant's suggestion that this is a violation of either due process or equal protection of the laws.

—required simply that the Navy reprocess the appellants' requests for conscientious objector status under the *modified* version of DOD 1300.6, which was promulgated during the pendency of the cases. These cases can in no way be thought to stand for the proposition that the Navy *must* process such requests for conscientious objector status *before* sending its personnel overseas.[2] We cannot find, and have not been referred to, any requirement of law or regulation creating any geographical restriction on Navy personnel assignment. A claim of conscientious objection results only in a requirement that the claim be processed.

Accordingly, we hold that the denial of injunctive relief by the district court was proper. The decision of the district court is affirmed.

2. We intimate no view on a different set of facts that might raise the question of whether military personnel could seek judicial review of the failure of military authorities to act upon such a request within a reasonable time. Appellant's application in this case was turned in on September 29, 1969. His orders required him to report for transportation to Vietnam on October 7, 1969. We do not think on these facts he could require the Navy to process his claim within that limited period of time.