RELIGIOUS TECHNOLOGY CENTER, CHURCH OF SCIENTOLOGY INTERNATIONAL, INC., et al., Plaintiffs–Appellants,

v.

Robin SCOTT, et al., Defendants–Appellees.

No. 87–5766.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 16, 1988.

Decided March 10, 1989.

Earle C. Cooley, Cooley, Manion, Moore & Jones, Boston, Mass., for plaintiffs-appellants.

Jerold Fagelbaum, Shea & Gould, Los Angeles, Cal. and Gary M. Bright, Bright & Powell, Carpinteria, Cal., for defendants-appellees.

Before NORRIS, HALL and KOZINSKI, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

This appeal arises out of litigation initiated by the Church of Scientology[1] ("Church") against the Church of the New Civilization[2] ("New Church"). The focus of the litigation is certain scriptural material allegedly stolen from the Church by the New Church.[3] Early in the litigation, the district court granted the Church a preliminary injunction restraining the New

Church from using the disputed scriptures. That injunction was vacated on appeal. *Religious Technology Center v. Wollersheim*, 796 F.2d 1076, 1084, 1089–91 (9th Cir.1986), (*"Wollersheim"*), *cert. denied*, 479 U.S. 1103, 107 S.Ct. 1336, 94 L.Ed.2d 187 (1987). The Church then filed a second application for interlocutory relief, which was denied by the district court on the ground that it was foreclosed by *Wollersheim*. The Church now appeals that denial. We reverse and remand to the district court for further proceedings in light of this opinion.

## I

## BACKGROUND

In its complaint, the Church stated claims against the New Church for racketeering under the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962(c)) ("RICO"), trademark infringement under federal and common law, unfair competition, receipt of stolen property, and various other state law claims. The Church sought damages as well as injunctive relief to prevent the New Church from disseminating the contents of scriptural materials which the Church claimed had been stolen from its Denmark offices by adherents of the New Church.

In an Ex Parte Application for Temporary Restraining Order ("TRO") and Order to Show Cause ("OSC"), the Church sought interlocutory relief on the ground that its scriptures were trade secrets and that it would suffer irreparable harm if its trade secrets were disseminated by another organization such as the New Church. The Church did not characterize the alleged harm as commercial or economic, but rather characterized it as "spiritual" harm. Essentially, the Church argued that its adher-

1. Formally, the plaintiffs and appellants are Religious Technology Center, Church of Scientology International, Inc. and Church of Scientology California, which are related entities constituting the Church of Scientology founded by L. Ron Hubbard. For convenience, we refer to the plaintiffs/appellants collectively as the Church.

2. Defendants and appellees are the Church of the New Civilization and various individuals involved with the Church of the New Civilization. For convenience, we refer to the defendants/appellees collectively as the New Church.

3. *See generally, Religious Technology Center v. Wollersheim*, 796 F.2d 1076, 1077–79 (9th Cir. 1986), *cert. denied*, 479 U.S. 1103, 107 S.Ct. 1336, 94 L.Ed.2d 187 (1987) for discussion of the underlying facts in this litigation.

**1308**

ents would suffer irreparable spiritual injury if the New Church were free to disseminate the disputed materials. *See Wollersheim,* 796 F.2d at 1079.

The district court granted the Church a TRO and later extended it to a preliminary injunction, prohibiting the New Church from "using, distributing, exhibiting or in any way publicly revealing" the scriptures. *Id.* The preliminary injunction was based on the district court's finding that the scriptures were trade secrets and entitled to protection under both RICO and California law.

On appeal, we vacated the preliminary injunction. We held that the scriptures did not qualify as trade secrets under California law because of the failure of the Church to claim that the scriptures had any commercial value. We rejected the Church's argument that the scriptures qualified as trade secrets because of their spiritual value. *Id.* at 1090–91.[4]

The Church returned to the district court and filed a second Ex Parte Application for Temporary Restraining Order and Order to Show Cause, again asking the court to restrain the New Church from using the scriptural materials. This time, the Church argued that the scriptures qualified as trade secrets because they had economic value. Specifically, the Church contended that if the New Church was not enjoined from using the scriptures, "[p]laintiffs will be forever at a loss to protect the confidential nature and resultant *economic value* of these materials. Defendant will obtain an economic advantage that they would not otherwise possess which will be used to divert parishioners, the value and goodwill of which cannot be monetarily measured for plaintiffs." Excerpt of Record ("E.R."), Vol. 1:347 at 29. (Emphasis added.) After a hearing, the district court denied the application "solely based upon

the Ninth Circuit's ... decision [in *Wollersheim* ]." *Id.* Vol. 3:421 at 2.

## II

## JURISDICTION

This court may hear appeals from interlocutory orders of the district court which grant, continue, modify, refuse or dissolve injunctions. 28 U.S.C. § 1292(a)(1).[5] Ordinarily, an appeal does not lie from the denial of an application for a temporary restraining order; such appeals are considered premature and are disallowed "[i]n the interests of avoiding uneconomical piecemeal appellate review." *Kimball v. Commandant Twelfth Naval District,* 423 F.2d 88, 89 (9th Cir.1970).

We have recognized, however, that a denial of a TRO may be appealed if the circumstances render the denial "tantamount to the denial of a preliminary injunction." *Environmental Defense Fund, Inc. v. Andrus,* 625 F.2d 861, 862 (9th Cir.1980). *See also Kimball,* 423 F.2d at 89. In *Andrus* we held the denial of the TRO was tantamount to the denial of a preliminary injunction because of the presence of two factors: the denial of the TRO followed a "full adversary hearing" and "in the absence of review, the appellants would be effectively foreclosed from pursuing further interlocutory relief." *Id.*

The rationale of *Andrus* applies with equal force to this appeal. Here the district court denied the Church's renewed application for a TRO and an OSC following a hearing at which all parties were represented. The transcript of the hearing and the court's written order denying the application make it unmistakably clear that the order was tantamount to a denial of a preliminary injunction. During the hearing, the district judge was emphatic in her

4. In *Wollersheim,* we also held that the Church's RICO claim could not provide the basis for injunctive relief. *Id.* at 1077.

5. 28 U.S.C. § 1292(a)(1) provides:
"[T]he courts of appeals shall have jurisdiction of appeals from: (1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of

the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court; ..."

view that our decision in *Wollersheim* foreclosed any interlocutory relief on the grounds advanced in the Church's new application: "I don't believe that the appellate court feels that in this case an injunction is appropriate.... I would say that we don't have anything much to talk about." Supp. E.R. at 6–7. In her written order she denied the application "solely based upon the Ninth Circuit's August 1986 decision...." E.R.Vol. 3:421 at 2. The futility of any further hearing was thus patent; there was nothing left to talk about. In these circumstances, we hold, as we did in *Andrus*, that the denial of the TRO and the OSC was "tantamount to the denial of a preliminary injunction." 625 F.2d at 862. Accordingly, the district court's order is appealable under 28 U.S.C. § 1292(a)(1).[6]

### III

### LAW OF THE CASE

The denial of a preliminary injunction is subject to a limited standard of review. *Colorado River Indian Tribes v. Town of Parker*, 776 F.2d 846, 849 (9th Cir.1985). We reverse the denial only when the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact. *Id.* In the instant case, the district judge explained that she was basing her decision to deny the application for TRO and OSC—which we treat as the denial of a preliminary injunction—solely on our decision in *Wollersheim*. She interpreted *Wollersheim* as foreclosing interlocutory relief on any of the grounds raised by the Church in its second application, even though the Church advanced new state law theories and for the first time offered evidence that the scriptures in fact had economic value. Of particular importance to the instant appeal, the district court apparently interpreted *Wollersheim* as holding that the religious scriptures could not qualify as trade secrets under California law, regardless of whether they had commercial value.

■ With all respect, we believe that the district court read more into *Wollersheim* than we intended. Putting aside that part of the opinion which addressed the Church's claim to injunctive relief under RICO, the remainder of the opinion was fairly narrowly drawn. The only question before the court was whether a religious scripture could qualify as a trade secret under California law if it conferred a spiritual, as opposed to an economic, advantage on its owner. We determined that California law did not recognize information as a trade secret unless it conferred on its owner an actual economic advantage over com-

---

**6.** Arguably, one could read *Andrus* as laying down a black-letter rule that "a full adversary hearing" is a necessary, if not a sufficient, condition to the appealability of a denial of a TRO. We reject this wooden reading of *Andrus*. The teaching of *Andrus* is that a denial of a TRO is appealable if the circumstances make it unmistakably clear that the denial "is tantamount to the denial of a preliminary injunction." There the circumstances included "a full adversary hearing," which presumably means an evidentiary hearing; here the circumstances included a non-evidentiary adversary hearing at which all parties were represented. The record below makes it clear that an evidentiary hearing would have been pointless; in light of the district judge's ruling that *Wollersheim* barred all interlocutory relief, it would have been a waste of party and judicial resources to have conducted an evidentiary hearing.

The New Church argues that *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 433 n. 7, 94 S.Ct. 1113, 1121 n. 7, 39 L.Ed.2d 435 (1974) forecloses our treating this as an appeal from an order denying a prelimi-

nary injunction. We disagree. *Granny Goose* is simply inapposite. That case had nothing to do with the appealability of a denial of a TRO or any other question of appellate jurisdiction. It stands for the unremarkable proposition that a TRO issued by a state court remains in effect after removal to federal court only so long as it would under state law, notwithstanding the literal requirement of 28 U.S.C. § 1450 that all orders issued prior to removal remain in effect "until dissolved or modified by the district court." We fail to see how the holding of *Granny Goose* has any bearing on the issue of the *appealability* of the denial of the TRO in this case. However, we do agree with the New Church's apparent concern that we could not enjoin the use of the scriptures without giving the New Church a meaningful opportunity to file opposing papers and present evidence in a full adversary hearing. Whether this court may grant certain relief, however, is quite a different question from whether we have jurisdiction in the first place to review a TRO that is tantamount to a denial of a preliminary injunction.

petitors. 796 F.2d at 1091. Because the Church made no claim that the scriptures gave it a commercial advantage over its competitors, we held that the scriptures did not qualify as trade secrets under California law. *Wollersheim* turned, therefore, on the absence of any claim of economic advantage at the preliminary injunction stage. While we expressed doubts about whether the Church could allege the competitive market advantage required without "rais[ing] grave doubts about its claim as a religion and a not-for-profit corporation," *id.*, we did not decide one way or another whether the scriptures could qualify as trade secrets should the Church allege and prove economic advantage. Nor did we express any opinion as to whether the Church could be entitled to a preliminary injunction under any of the other state law theories advanced in its first application for interlocutory relief. Thus, *Wollersheim* did not establish the law of the case on either of these questions.

Accordingly, we REVERSE the district court's order denying the TRO and OSC and REMAND to the district court for further proceedings in light of this opinion. In so doing, we express no view as to whether the district court should exercise its discretion and decline to consider this second application for interlocutory relief on grounds that the Church is needlessly burdening the courts with repetitive applications for the same relief.

**CYNTHIA HOLCOMB HALL, Circuit Judge, dissenting:**

I agree that we have jurisdiction to hear this appeal and that the district court erred in construing our decision in *Wollersheim I* so broadly. I cannot join the majority opinion, however, because a remand to the district court for further evaluation of the appropriateness of preliminary relief constitutes an enormous waste of judicial resources.

In *Wollersheim I,* the Church of Scientology (the "Church") sought and obtained a preliminary injunction, based in part on its claim that the Church of the New Civilization (the "New Church") stole its protected trade secrets. The Church alleged that New Church adherents took certain scriptural materials from the Church when they left to form the New Church. The Church, however, did not characterize the alleged harm as commercial or economic. Instead, the Church alleged only that its followers would suffer spiritual injury if the New Church was permitted to retain and use the scriptures. On appeal, we held that the Church's failure to allege or offer proof that the scriptures had economic value meant that the scriptures did not qualify as trade secrets under California law.

Following our decision, the Church returned to the district court to again seek an injunction against the New Church's use and distribution of the disputed scriptures. This time, however, the Church alleged that the scriptures had economic value: "Plaintiffs will be forever at a loss to protect the confidential nature and resultant economic value of these materials. Defendant will obtain an economic advantage that they would not otherwise possess which will be used to divert parishioners, the value and goodwill of which cannot be monetarily measured by plaintiffs." The district court denied this second request for preliminary injunctive relief, construing our decision in *Wollersheim I* as precluding an injunction before a final hearing on the merits.

The Church made a tactical choice not to allege in its original application that the scriptures had an economic value. The Church cannot now avoid the consequences of that choice by burdening the district court with a second application for preliminary relief, and this court with a second interlocutory appeal. Where the Church easily could have alleged in its initial application that the scriptures had an economic value, we should hold that it is estopped from appealing the denial of its subsequent application for preliminary relief under California trade secrets law.[1]

1. The Church alleged several other state law theories of recovery in this and its prior application for preliminary injunctive relief. We did not specifically analyze these other claims in

The doctrine of judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process. *See* 1B *Moore's Federal Practice* ¶ .405[8], at 238–42 (2d Ed.1988). "The policies underlying preclusion of inconsistent positions are 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings.'" *Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1215 (9th Cir.1984), *cert. denied*, 469 U.S. 1197, 105 S.Ct. 980, 83 L.Ed.2d 982 (1985) (citations omitted). Judicial estoppel is "intended to protect against a litigant playing 'fast and loose with the courts.'" *Rockwell International Corp. v. Hanford Atomic Metal Trades Council*, 851 F.2d 1208, 1210 (9th Cir.1988) (citations omitted). Because it is intended to protect the integrity of the judicial process, it is an equitable doctrine invoked by a court at its discretion.

I recognize that this is not the prototypical case for invoking judicial estoppel. Judicial estoppel is most commonly applied to bar a party from making a factual assertion in a legal proceeding which directly contradicts an earlier assertion made in the same proceeding or a prior one. *See generally* Note, *Judicial Estoppel: The Refurbishing of a Judicial Shield*, 55 Geo.Wash. L.Rev. 409, 410–12 (1987); Comment, *Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel*, 80 Nw.U.L. Rev. 1244 (1986)[2]. Nevertheless, I find the policies underlying the doctrine of judicial estoppel to make this an equally appropriate case for its application.

Considerable judicial resources were expended in resolving the novel question of state law presented by the Church's original argument that information could be a trade secret if it conferred a spiritual advantage on its creator. But instead of laying the question of interlocutory relief to rest, our decision in *Wollersheim I* that California law protects trade secrets only if they have commercial value, simply prompted the Church to start the process all over again by arguing in a new application for a TRO that the scriptures did have commercial value after all. As a result of the Church's actions in pursuing two successive applications for injunctive relief, instead of a single application based upon alternative theories of spiritual and commercial value, there is no question but that the courts as well as the defendants have been needlessly burdened.

The integrity of the judicial process would be seriously undermined if every litigant could compel the courts to hear and decide repetitive requests for the identical relief. The Church should not be permitted to use the courts as a laboratory in which to experiment. The doctrine of judicial estoppel was fashioned to prevent just this sort of litigation strategy which plays fast and loose with the judicial process.

---

*Wollersheim I*. During oral argument in the present case, however, counsel for the Church, with commendable candor, acknowledged that the only argument made before this court to support the first injunction was that the scriptures conferred a spiritual advantage on the Church and its followers. The courts need not be at the Church's beck and call to now analyze the relevance, if any, of the Church's new allegations of commercial advantage to these other state law theories.

**2.** *Finley v. Kesling*, 105 Ill.App.3d 1, 60 Ill.Dec. 874, 433 N.E.2d 1112 (1982), is cited by the latter article as a paradigmatic case for the invocation of judicial estoppel. In *Finley*, a declaratory action filed by the former owner of the Oakland Athletics baseball team to resolve ownership interests in the family corporation, the plaintiff asserted that he was the beneficial owner of 71% of the stock. The court estopped him from taking that position because, in a divorce action eight years before, he had testified under oath that he owned only 31% of the stock and that his wife and children owned the rest. *Finley*, 105 Ill.App.3d at 10, 60 Ill.Dec. at 881, 433 N.E.2d at 1119.