**METRO PUBLISHING, LTD.,**
a California partnership,
Plaintiff–Appellant,

v.

**SAN JOSE MERCURY NEWS,**
a California corporation,
Defendant–Appellee.

No. 91–16537.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 5, 1993.

Decided March 8, 1993.

John I. Alioto, Alioto & Alioto, San Francisco, CA, for plaintiff-appellant.

Kevin M. Fong, Pillsbury, Madison & Sutro, San Francisco, CA, for defendant-appellee.

Before: FLETCHER, REINHARDT and NOONAN, Circuit Judges.

FLETCHER, Circuit Judge:

In this trademark infringement action Metro Publishing ("Metro"), the publisher of the weekly tabloid *Metro,* a regular feature of which is a column called "Public Eye," appeals the district court's denial of its motion for a preliminary injunction to stop San Jose Mercury News ("Mercury News") from publishing a competing weekly tabloid called *"eye."* We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Appellant has published the weekly tabloid *Metro,* billed as "Santa Clara Valley's Weekly Newspaper," since 1984. The paper is distributed free to the public every Thursday in the San Jose metropolitan area, mainly via newspaper racks found in restaurants, night clubs, stores, theaters, and on the street. According to appellant, although *Metro* carries news and feature stories, "the paper's focus is entertainment and arts, including restaurant reviews, a dining guide and a detailed list of what's happening in metropolitan San Jose in areas of film, music, theater, nightlife and special events." (Appellant's Opening Br. at 5.)

In 1985, *Metro* began carrying a column called "Public Eye," devoted primarily to local political gossip and intrigue. The format of "Public Eye" has varied somewhat over the years. Although since its introduction "Public Eye" has been a consistent feature, until recently it has only occasionally been mentioned on the cover of the paper. The column is sometimes personified as "Eye" in the pages of *Metro,* as, for example, "Eye has it on good authority that...." and "Eye's call set the wheels of bureaucracy spinning." (E. Davis Decl. of 9/12/91 Ex. C at 4, Ex. D at 3.) "Public Eye" has not been registered as a trademark by appellant.

Appellee points out, with support in the record, that after appellant learned in the spring of 1991 that Mercury News planned to introduce its publication *eye,* a reference to the "Public Eye" column began featuring prominently on every *Metro* cover. In addition, in May 1991, Metro changed the word "eye" in the "Public Eye" logo to a different typeface and to lower case, and began using it at times without "public," so that it closely resembled the "eye" logo adopted by the Mercury News.

The *San Jose Mercury News* is a daily newspaper serving the San Jose metropolitan area. According to the complaint, it has an 85% share of the Santa Clara County daily newspaper market. Until June 1991, a "Weekend" section, printed in standard newspaper format, was included in each Friday edition of the *News.* The "Weekend" section included listings of movies and events, film and restaurant reviews, and "other items on entertainment options." (Br. for Appellee at 5.)

In June 1991, Mercury News discontinued its "Weekend" section and replaced it with the weekly tabloid *eye* which carries the same items as "Weekend" did, "plus additional entertainment information sought by many existing Mercury News Readers." (*Id.*) Although appellee notes that *eye* does not report on political matters, the entertainment-oriented content of *eye* overlaps substantially with that of *Metro* and there is a notable similarity in the two tabloids' five-column formats.

In addition to being included as a Friday insert in the *News, eye* is distributed free to the public from newspaper racks bearing the *"eye"* logo. The racks are of the same type and located in the same sorts of establishments as Metro's racks.

After notifying Mercury News in May 1991 that it considered the use of the name "eye" for the forthcoming publication an infringement of its "Public Eye" mark, appellant filed suit in district court. The complaint alleges federal trademark and antitrust violations as well as state law claims of unfair competition, trademark dilution, and predatory pricing, and seeks damages

and injunctive relief. The district court denied appellant's application for a temporary restraining order and set a preliminary injunction hearing for September 19, 1991.[1]

In support of its motion for a preliminary injunction on its Lanham Act claims, appellant submitted a number of declarations in which regular readers of *Metro* recounted experiences wherein they picked up a tabloid thinking it to be *Metro*, only to discover that it was in fact Mercury News' *eye*. Some stated, for example, that when they first saw *eye* as a weekly insert in the *News* they assumed it was *Metro:* "I saw an arts and entertainment insert in the paper and thought it was *Metro*. It looked just like *Metro*. I wondered what *Metro* was doing in the *Mercury News*." (C.R. 27 (H. Teifeld Decl.) ¶ 2, at 2.) An advertiser recalled becoming "very upset" when he mistakenly thumbed through a copy of *eye* trying to locate the ad he had placed in *Metro*. (C.R. 24 (Gaetano Decl.) ¶ 2, at 2.)

Other declarants noted their familiarity with *Metro*'s "Public Eye" feature. A political consultant in San Jose who reads the column "religiously" and noted that she and her friends refer to it as the "Eye," observed, "It used to be that reference to the 'Eye article' meant the one that appeared in *Metro*. Now it can also mean an article in the *Mercury News*." (C.R. 30 (Kouzes Decl.) ¶ 2, at 2.) One of *Metro*'s founders submitted a declaration in which he recalled being telephoned by an advertising representative who "congratulated [him] on the *Eye* publication which she believed was Metro's." (C.R. 28 (Pulcrano Decl.) ¶ 3, at 2.) Finally, several of the declarants noticed that *eye* was being distributed out of *Metro* newsracks at different locations.

The district court denied appellant's motion for a preliminary injunction except insofar as it sought to prohibit Mercury News from placing its tabloid in *Metro* newsracks which appellee, maintaining that any such placement was accidental, did not oppose. Reasoning that "the name of a column within a paper does not appear to rise to the level of a trademark," the court found that appellant had not shown a likelihood of success on the merits of its trademark infringement claim. (E.R. 1 at 5.)[2] The court continued, "There is evidence that consumers are confused. However, this evidence of confusion is relevant only if it is clear that there is a trademark to be protected. Since there does not appear to be any trademark, the Metro's use of the term 'eye' does not appear to merit protection." (*Id.*)

Appellant has timely appealed the district court's order.

## JURISDICTION

The district court had jurisdiction of the federal trademark claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1337, and 1338. This court has jurisdiction to review the court's denial of a preliminary injunctive relief under 28 U.S.C. § 1292(a)(1).

## DISCUSSION

 To obtain a preliminary injunction, a party must demonstrate either 1) a combination of probable success on the merits and the possibility of irreparable injury, or 2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in its favor. *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1381 (9th Cir.1987). The denial of a preliminary injunction is subject to only a limited review. *Religious Technology Ctr., Church of Scientology Int'l, Inc. v. Scott*, 869 F.2d 1306, 1309 (9th Cir. 1989). We can reverse the denial only if we find that the district court abused its discretion or based its decision on an erroneous legal standard or on clearly errone-

---

1. Although in district court appellant sought preliminary injunctive relief on the basis of both trademark and trade dress infringement, on appeal it does not pursue trade dress as a ground for relief.

2. With respect to appellant's trade dress infringement claim, the court found that, owing to differences in coloring and the presentation of the logos, "the total package of the News eye insert does not infringe upon the total package of the Metro." (E.R. at 4.)

ous findings of fact. *Id.* Issues of law underlying the district court's decision on the preliminary injunction we review de novo. *Senate of Cal. v. Mosbacher*, 968 F.2d 974, 976 (9th Cir.1992).

■ A plaintiff will succeed on the merits of its trademark infringement claim under the Lanham Act if it establishes that the defendant's use of its mark gives rise to a "likelihood of confusion" in the consuming public. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir.1992). A likelihood of confusion exists when consumers " 'are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques.' " *Nutri/System, Inc. v. Con–Stan Indus., Inc.*, 809 F.2d 601, 604 (9th Cir.1987) (quoting *Shakey's Inc. v. Covalt*, 704 F.2d 426, 431 (9th Cir.1983)). The Ninth Circuit has developed an eight-factor test to assess likelihood of confusion: 1) strength of the allegedly infringed mark; 2) proximity or relatedness of the goods; 3) similarity of the sight, sound, and meaning of the marks; 4) evidence of actual confusion; 5) degree to which the marketing channels converge; 6) type of goods and degree of care consumers are likely to exercise in purchasing them; 7) intent of the defendant in selecting the allegedly infringing mark; and 8) likelihood that the parties will expand their product lines. *Gallo*, 967 F.2d at 1290. Because each factor is not necessarily relevant to every case, this list functions as a guide and is "neither exhaustive nor exclusive." *Id.* Once the plaintiff has demonstrated a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted. *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 n. 3 (9th Cir.1989). It is not necessary that a trademark be registered in order for it to qualify for protection under the Lanham Act. *New West Corp. v. NYM Co., Inc.*, 595 F.2d 1194, 1198 (9th Cir. 1979).

■ Metro contends that the district court misinterpreted trademark law when it ruled that the title of a newspaper column cannot acquire trademark status and consequently failed to consider its evidence of likelihood of confusion. Because the issue is one of law, we review the district court's ruling de novo and conclude that Metro's contention is correct.

A trademark is defined under the Lanham Act as

> any word, name, symbol, or device, or any combination thereof—
>
> (1) used by a person, or
>
> (2) which a person has a bona fide intention to use in commerce and applies to register on the principal register established by this chapter,
>
> to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.

15 U.S.C. § 1127. On its face, there is nothing in this provision that would exclude a newspaper column title from protection. To the contrary, a column name, because it serves to identify the column as the product of a particular writer or paper and to distinguish it from surrounding copy and the features of competing publications, is entirely consistent with this definition.

A schedule of goods and services promulgated by the Commissioner of Patents and Trademarks for the purpose of administering the Trademark Act appears at 37 C.F.R. § 6.1. *See also* 15 U.S.C. § 1112 (authorizing classification scheme). Included under the heading "goods" in this schedule are "[p]aper and paper articles; ... printed matter, newspaper and periodicals." The list, while it does not "limit or extend [an] applicant's or registrant's rights," 15 U.S.C. § 1112, nevertheless suggests that the title of a newspaper column, attached as it is to "printed matter," can qualify as a trademark. *See New West*, 595 F.2d at 1198 (noting that printed matter is considered a "good" under trademark classification scheme).

■ More compelling, however, is the fact that titles of newspaper and magazine columns have been registered as trade-

marks by the United States Patent and Trademark Office. Metro has submitted certified copies of several such registrations and requests that this court take judicial notice of them pursuant to Fed.R.Evid. 201(b)(2).[3] These certificates demonstrate that the Patent and Trademark Office has deemed, for example, "Up and Down Wall Street" from the *Wall Street Journal*, "Currents" of *U.S. News & World Report*, and *The New Yorker* magazine's "The Talk of the Town" worthy of trademark status. (Appellant's Req. for Judicial Notice Exs. A, B, H.)

Although we have located no cases directly on point, at least one court of appeals decision implicitly recognizes that the title of a magazine feature may be deserving of trademark protection. In *DC Comics Inc. v. Reel Fantasy*, 696 F.2d 24, 25 (2d Cir.1982), the owner of the Batman comic book adventure series sued a corporation which ran a chain of retail bookstores that sold comic books and operated under the name "The Batcave." Within the Batman series, the Batcave has served as the caped crusader's secret hideout since 1944. *Id.* "The Batcave" also denotes a column which has appeared in Batman comic books since 1959. *Id.* DC Comics alleged, inter alia, that the bookstore operator had infringed on its unregistered trademark in "Batcave." *Id.* at 26. The Second Circuit reversed the district court's grant of summary judgment in favor of the bookstore operator, in part because "customers might well believe that the Batcave book-stores are operated by those who create or publish Batman comic books." *Id.* at 27.[4]

The district court erred when it ruled that a newspaper column cannot acquire trademark status. Reader recognition of and loyalty to a particular column are things of value in the newspaper publishing world and, under appropriate circumstances, merit protection under the Lanham Act.

REVERSED and REMANDED for reconsideration of Metro's motion for a preliminary injunction in light of the foregoing.

---

**3.** Rule 201(b)(2) of the Federal Rules of Evidence permits a federal court to take judicial notice of a fact that is not subject to "reasonable dispute" because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Certified copies of trademark registrations from the principal register fall within this category. *Cf. Nugget Hydroelectric, L.P. v. Pacific Gas and Elec. Co.*, 981 F.2d 429, 435 (9th Cir.1992) (judicial notice of published decisions of public utility commission); *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 864 F.2d 1475, 1479–80 & n. 2 (9th Cir.1989) (judicial notice of figures contained in reports of a public body).

**4.** A very similar problem arose in *D C Comics, Inc. v. Powers*, 465 F.Supp. 843 (S.D.N.Y.1978).

There, defendants sought to introduce an underground news publication called *The Daily Planet*. *The Daily Planet*, however, is also the name of the fictitious newspaper in the Superman comic book series, as well as the title of a promotional column that has appeared from time to time within Superman comic books. While noting that the plaintiff's interest in the news column title was not "as firmly established" as its interest in "The Daily Planet" simply as an element of the Superman story, *id.* at 847 n. 4, the district court nonetheless ruled that DC Comics had established a trademark in "The Daily Planet," *id.* at 847, and preliminarily enjoined the underground publication from using the name, *id.* at 850.