**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LESLIE WHALEY,
    *Petitioner-Appellant,*

v.

BRIAN BELLEQUE, SUPERINTENDENT,
OREGON DEPARTMENT OF
CORRECTIONS,
    *Respondent-Appellee.*

No. 06-35759

D.C. No.
CV-05-00090-GMK

OPINION

Appeal from the United States District Court
for the District of Oregon
Garr M. King, District Judge, Presiding

Argued and Submitted
July 11, 2007—Portland, Oregon

Filed March 24, 2008

Before: Stephen Reinhardt, Circuit Judge;
Cynthia Holcomb Hall, Senior Circuit Judge;
Milan D. Smith, Jr., Circuit Judge.

Opinion by Judge Reinhardt;
Dissent by Judge Hall

## COUNSEL

Thomas J. Hester, Assistant Federal Public Defender, Portland, Oregon, for the appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Carolyn Alexander, Assistant Attorney General, Office of the Oregon Attorney General, Salem, Oregon, for the appellee.

## OPINION

REINHARDT, Circuit Judge:

Leslie Whaley has shuttled in and out of habeas corpus and parole proceedings since 1993. In one of the most recent iterations of this procedure, the state represented in an Oregon appellate court proceeding that his constitutional challenge to his parole conditions was moot under Oregon law because he had been removed from parole and reincarcerated. Although the parole revocation was based on the very conditions that he contends are unconstitutional, Whaley did not challenge that assertion, and the Oregon court, accordingly, dismissed the appeal. The state now argues, citing Oregon case law, that Whaley's constitutional claims were not moot. Therefore, it asserts, he was obligated to appeal the state court's dismissal to the Oregon Supreme Court, and his failure to do so constitutes a procedural default. We hold that under *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990), the state is judicially estopped from making this argument in federal court, and remand this matter to the district court to consider the merits of Whaley's constitutional claims.

## I.

In 1989, Whaley was convicted of rape and sentenced to a maximum term of twenty years of incarceration, and a mini-

mum term of ten years before becoming eligible for parole. He was also convicted of kidnapping, and sentenced to an additional maximum term of ten years to be served consecutively. The offenses involved a woman he met in a bar. In 1993, he filed a petition for post-conviction relief and a federal district court eventually found that there was insufficient evidence to support the kidnapping conviction. *Whaley v. Thompson*, 22 F. Supp. 2d 1146, 1167-68 (D. Or. 1998), *aff'd* 210 F.3d 388, 2000 WL 84364 (9th Cir. 2000) (unpublished), *cert. denied*, 531 U.S. 864 (2000).

In August 2000, the Circuit Court of the State of Oregon granted Whaley's subsequent habeas corpus petition, holding that the Board of Parole's conclusion that he suffered from a severe emotional disturbance that constituted a danger to the community was not supported by the record. The court ordered that he be released on parole. Shortly thereafter, he was released with numerous parole conditions, including: no dating without parole officer approval; anger management counseling; electronic monitoring, curfew restrictions, and geographical restrictions if ordered by the parole officer; no contact with the victim or her family; and no contact with his former girlfriend or his adult daughter from that relationship.

At the time, Whaley was engaged to Carolyn Flores, who was evidently responsible for creating a website critical of the state's treatment of him. He was prohibited, as a condition of his parole, from having contact with a "Mr. Flores," who was apparently Ms. Flores's former or current husband. Flores has two minor children whom Whaley considers stepsons. It appears that in August 2000, Whaley and Flores requested permission from the parole officer to marry, but received no answer.

After Whaley served a brief jail sanction in October 2000 for enrolling in a sex offender program not approved by his parole officer, the parole board imposed several additional parole conditions on him. He was not to "develop or possess

personal web sites without the prior permission of [parole officer]"; "use, own or operate any computer" unless authorized; or have his "name, address, phone, business or enterprise of any type displayed in any manner on any web page accessible to the general public." His "knowledge that such web site or web page exist [sic] . . . as may be verified by periodic polygraph examination," would be "considered evidence of [his] involvement in such web site . . . and [would] be considered a violation of this condition of supervision." He was also forbidden to possess or use intoxicating beverages, have contact with minor females, "frequent any place where minors are likely to congregate . . . without prior written approval," and have contact with Flores's children. He was also required to submit to random polygraph tests. His parole was subsequently revoked and reinstated several times, with the Board imposing these conditions each time, with some variations.

In July 2001, Whaley was sanctioned for meeting with then-fiancée Flores at a car dealership while her children were nearby, and for not completing an approved sex offender treatment program. In August 2001, his parole officer directed him to have no contact with Flores. Four months later, while he was incarcerated for violating parole conditions, he was given permission to marry her. In a 2002 report summarizing a parole Board hearing, the state described his marriage as "defiant" and recommended that he be returned to prison for 18 months.

In January 2002, the Board again revoked Whaley's parole, and imposed two new parole restrictions: "no relationships with women without the permission of parole officer," and "do not develop or maintain relationships with persons who have control over minor children without permission of parole officer."

In April 2002, the Board revoked Whaley's parole for unspecified "criminal activity" and imposed additional condi-

tions, including a "prohibition against viewing, listening to, owning or possessing any sexually stimulating visual or auditory materials that are relevant to [Whaley's] deviant behavior," a requirement that Whaley keep a driving log and not drive a motor vehicle alone without approval, and a prohibition against using a post office box without permission.

In May 2002, Whaley requested administrative review of these conditions, but the parole board found his petition untimely because he did not challenge the conditions when they were first imposed in November 2000. He then filed a challenge in the Oregon Court of Appeals. The state moved to dismiss, asserting that the petition was untimely. The state court held that the special conditions of parole were reviewable.

While this litigation was pending, Whaley continued to shuttle between prison and parole. In June 2002, his parole was revoked because he briefly left his hotel room after curfew and contacted his wife through an intermediary, and because his wife spoke on the phone with the night clerk of his hotel. In September 2002, the Board released him and imposed additional parole conditions on him. He filed an administrative appeal, which the parole board rejected as untimely. In January 2003, his parole was again revoked for violations of his parole conditions. In April 2003, the Board ordered him to spend the remaining 43 months of his sentence in prison.

After Whaley was reincarcerated, the state moved for dismissal of his challenge to the parole conditions, asserting that his claims were moot and that the court therefore lacked jurisdiction. For some unexplained reason, Whaley did not oppose the motion, and in April 2004, after noting that the state's motion was unopposed, the Oregon Court of Appeals issued an order concluding "[j]udicial review dismissed."

The Oregon public defenders, who had represented Whaley, informed him of the dismissal in a letter dated July 1,

2004. The letter did not mention his right to appeal the dismissal, but stated that he could pursue either state post-conviction relief or federal habeas corpus relief. In November 2004, he filed a *pro se* petition for habeas corpus in the Oregon Supreme Court challenging, among other things, his conditions of parole. The supreme court denied the petition shortly thereafter, without comment.

Whaley filed the current petition in federal district court in March 2005, challenging, *inter alia*, the terms of his parole. The district court held on July 14, 2006, that his claims were exhausted because he was time-barred from appealing to the Oregon Supreme Court, but procedurally barred because he had failed to appeal the dismissal for mootness to that court. The district court, in denying his habeas petition, held that he had "failed to demonstrate cause for the [procedural] default . . . ." as well as prejudice.

Whaley filed a timely notice of appeal on August 14, 2006. At oral argument before this court, his counsel reported that he had been released on parole two weeks prior to argument on the same conditions as before.

## II.

Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies. 28 U.S.C. § 2254(b)(1)(A). Whaley's petition is not barred by the exhaustion requirement, because, as the district court determined, there is no longer a state remedial process available for adjudicating Whaley's claims. On appeal, neither party contests this determination.

The state argues here, as it did successfully in the district court, that Whaley's claim is procedurally defaulted because he failed to appeal the Oregon Court of Appeals' dismissal of his challenge to his parole conditions to the Oregon Supreme Court. When Whaley petitioned the Oregon Court of Appeals

for relief, however, the state moved to dismiss the petition, asserting that it was moot. The state represented that no remedy was available to him because "petitioner has been revoked from parole and is no longer subject to the supervision conditions he challenges in this proceeding." It stated that "[t]he Oregon Supreme Court has recognized that 'appellate courts may not decide abstract, hypothetical or contingent questions,' " and contended that, because it was moot, the petition did not present a "justiciable controversy" under Oregon law. Whaley did not challenge the state's mootness argument or file any opposition to its motion, and the Oregon appellate court granted the state's unopposed motion to dismiss.

Remarkably, the state now takes the position in its brief that Whaley's claim was in fact not moot. It argues that Whaley should have "explain[ed] to the [Oregon] Court of Appeals that the case was not mooted by his revocation and reincarceration, and then [sought] review by the Oregon Supreme Court." In now trying to prove that it was wrong in its representations to the Oregon Court of Appeals, the state even goes so far as to assert that a prior Oregon case, *Perdue v. Board of Parole and Post-Prison Supervision*, 165 Or. App. 751 (2000), contradicts the position it took before the state court. Under *Perdue*, a petition for judicial review is not moot if "a correlation exists between the challenged Board action and the consequences from which relief is sought." *Id.* at 754. The state now argues in its brief that the Board action challenged by Whaley and the consequences from which he sought relief "were directly correlated."[1]

---

[1]During oral argument the state repeatedly attempted to evade the court's efforts to discern its *current* position with respect to whether Whaley's claims were moot under Oregon law. The dissent asserts that the state is now trying only to "persuade us that Whaley had a sufficiently colorable argument . . . that the Oregon supreme court would likely have agreed with him . . . ." That is no different from saying, as the dissenting judge stated in *Religious Technology Center v. Scott*, 869 F.2d 1306, 1311 (9th Cir. 1989) (Hall, J., dissenting), that the state has "chang[ed] its position over the course of judicial proceedings." The state argued before the state court that Whaley's case was moot, period. It certainly did not contend that the Oregon Supreme Court would disagree with its position.

**[1]** When in its motion for dismissal it represented to the Oregon appellate court that Whaley's claim was moot, the state did not mention *Perdue*, a case of which it was surely aware, as it had been a party to that proceeding only a short time earlier. By failing to do so, it violated the elementary rules of legal ethics. In any event, the state's position that its misrepresentation of the law provides the basis for precluding the victim of its "error" from vindicating his constitutional rights is "chutzpah" in the first degree, by any standard.

**[2]** More important, under the doctrine of judicial estoppel, the state cannot now reverse its position in order to suit its current objectives. "Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996). "Judicial estoppel is an equitable doctrine that is intended to protect the integrity of the judicial process by preventing a litigant from playing fast and loose with the courts." *Wagner v. Prof'l Eng'rs in Cal. Gov't*, 354 F.3d 1036, 1044 (9th Cir. 2004) (internal quotation marks omitted). The doctrine applies to a party's legal as well as factual assertions. *Id.*

**[3]** In *Russell v. Rolfs*, 893 F.2d 1033, 1037-38 (9th Cir. 1990), we held that judicial estoppel bars a state from taking different legal positions in state and federal court in order to create a procedural default that would otherwise bar a habeas petition. In that case, Washington State argued to a federal district court that federal review of a habeas petition was not proper because the petitioner had an adequate and available remedy in state court. When the petitioner then sought that remedy in state court, the state "disregarded its previous representation in federal court and argued the petition was procedurally barred." *Id.* We held that "[t]he state prevailed by telling the state court the opposite of what it told the federal court. The proposition that the state can be estopped from

relying on the advantage it gained by doing so seems unre-markable." *Id.* at 1038.

**[4]** In this case, the state created an advantage for itself by arguing to the Oregon court that Whaley's claims were moot. The state cannot now expect a federal court to hold that Whaley had an available state remedy because, according to the state's current petition, the claim was *not* moot. It is not for this court to choose between the state's inconstant and self-serving descriptions of Oregon law. We may not allow the state to represent in federal court the opposite of what it represented to the state court when it succeeded in defeating Whaley's claim.[2]

**[5]** A petitioner with a claim that is moot under Oregon state law does not need to pursue his claims further because he no longer has any available state remedy. As the Oregon Supreme Court held in *State v. Snyder*, 337 Or. 410, 418 (2004), "the judicial power of the state is limited to deciding existing controversies between parties." Because Oregon courts may not decide moot cases, it is difficult to conceive of a legal bar other than mootness that would lead us more confidently to conclude that there is an absence of available state remedies.[3]

---

[2]Contrary to the dissent's assumption, we do not and need not defer in this case to the state court's order. The state moved to dismiss the petition as moot on the ground that it had revoked Whaley's parole. Whaley did not oppose the motion, and the state court thereupon granted the unopposed motion. It did not issue a decision on the merits, and we therefore need not defer to the decision or determine whether it was unreasonable. *Cf.* 28 U.S.C. § 2254(d)(1).

[3]The dissent argues that our application of judicial estoppel means that the petitioner is free to abandon action at the state level whenever a state convinces a state court that a petition for post-conviction relief is procedurally defective. If a petition is procedurally defective—for example, if it is moot—then the petitioner is not "abandoning" any relief at the state level. There is no relief to be had. If the petitioner decides to try his luck in federal court, the state may of course continue to argue that his case is

**[6]** It is true that Whaley could have filed a notice of appeal to the Oregon Supreme Court. But according to the state's representations in state court, which bind it here, such an appeal would have been futile because the Oregon Supreme Court will not hear a moot case. A remedy that is futile because the court will not hear the merits of a case is unquestionably not available. Thus, there was no procedural default, and the district court is not barred from hearing Whaley's petition.

**[7]** Having argued in the Oregon appeals court that Whaley's claims were moot, and, as a result having obtained a dismissal of his claims, the state cannot now oppose his petition for relief on the theory that the claims were not moot, and that, therefore, he failed to exhaust an available state remedy.

REVERSED and REMANDED for further proceedings on the merits.

---

HALL, Circuit Judge, dissenting:

I.

Before seeking a federal writ of habeas corpus, a state prisoner must exhaust state remedies under 28 U.S.C.

---

moot. It cannot, as in this case, however, switch its position to suit its needs at the moment.

We cannot imagine that in this case the state will raise mootness at a subsequent time, because it has already switched its position once and has, as we have pointed out, an ethical obligation to represent to the court its view of the law as it honestly perceives it. Moreover, it is apparent that the case is not moot for two reasons. One, Whaley is now serving parole time for a violation of terms that he is asserting are unconstitutional. Two, he is subject to a future violation, again, for terms that he is contesting in this proceeding.

§ 2254(b)(1) by giving the state the opportunity "to pass upon and correct" the alleged federal constitutional violations. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). "A petitioner has satisfied the exhaustion requirement if: (1) he has 'fairly presented' his federal claim to the highest state court with jurisdiction to consider it, or (2) he demonstrates that no state remedy remains available." *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (citations omitted). Moreover, "if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . there is a procedural default for purposes of federal habeas" and the federal court must generally dismiss the petition. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Here, on motion by the state, the Oregon court of appeals dismissed as moot Whaley's 2004 challenge to his parole conditions because he had been reimprisoned. Whaley never opposed the state's motion or appealed this decision to the state supreme court, and the time to do so has long since elapsed. Instead, he filed a new petition to the Washington supreme court under its discretionary original jurisdiction procedures, which clearly did not fairly present the claims nor satisfy the exhaustion requirement. *See Casey v. Moore*, 386 F.3d 896, 918 (9th Cir. 2004); *Sweet v. Cupp*, 640 F.2d 233, 238 (9th Cir. 1981).

Quite surprisingly, the majority finds no procedural default. It reasons that Whaley's claims were moot as a matter of state — but not federal — law because the state is estopped from contending otherwise, having argued the claims were moot in its motion to dismiss.[1] So, because Oregon courts will not

---

[1] In the AEDPA, Congress provided that "[a] state shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the state, through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(3). However, our circuit has nar-

address moot claims, the majority concludes that Whaley had no state remedy available to him, and thereby excuses the exhaustion requirement.

I disagree that judicial estoppel applies here and would instead find that Whaley procedurally defaulted when he failed timely to directly appeal to the state supreme court. Moreover, Whaley has not attempted to show cause for or prejudice from the procedural default, or contended that application of the procedural default doctrine would result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750, *Murray v. Carrier*, 477 U.S. 478, 495 (1986). Therefore, I conclude his petition should be dismissed and respectfully dissent.

## II.

To determine whether a state remedy is "available," "the federal courts are authorized, indeed required, to assess the likelihood that a state court will accord the habeas petitioner a hearing on the merits of his claim." *Phillips v. Woodford*, 267 F.3d 966, 974 (9th Cir. 2001) (quoting *Harris v. Reed*, 489 U.S. 255, 268 (1989) (O'Connor, J., concurring)). In other words, we will not conclude that Whaley was without a state remedy simply because the Oregon court of appeals said so. We must instead inquire independently what the Oregon supreme court was "likel[y]" to have done if Whaley had properly appealed. If "the likelihood" is that it would have disagreed with the court of appeals — that is, concluded that Whaley's petition was not moot — then Whaley would have been accorded a hearing on the merits of his petition, and his

rowly construed this provision and held that normal waiver and estoppel rules apply to a state's claim that the petitioner has procedurally defaulted. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002). Therefore, § 2254(b)(3) does not prevent the state from being estopped to raise procedural default here.

failure timely to seek such a hearing would mean he had procedurally defaulted.

Whaley had a strong argument that his claims were not moot, and he should have properly presented it to the state supreme court. As the majority recognizes, Whaley was reincarcerated for violating the very parole conditions that his petition challenged. This meant that the conditions were meaningful even after they were no longer literally in effect, because they were the reason that Whaley was imprisoned. Thus, success on his petition would have had real consequences: his incarceration would have been illegal, and he would have been released.

So, Whaley could persuasively have argued that his petition was not moot. *See Perdue v. Bd. of Parole & Post-Prison Supervision*, 165 Or. App. 751, 754 (2000) (a petition for judicial review is not moot if "a correlation exists between the challenged Board action and the consequences from which relief is sought"). The Oregon supreme court probably would have agreed with him and given him a hearing on the merits. This means Whaley had an "available" remedy under state law that he did not timely pursue, and his federal petition is thus procedurally defaulted.

### III.

The majority avoids this result by estopping the state from asserting it, and, in so doing, invokes the doctrine of judicial estoppel in a context where it does not apply. Our circuit has repeatedly held that for a party to be judicially estopped, its litigation positions must have been clearly inconsistent and directly contradictory. *See, e.g.*, *United States v. Castillo-Basa*, 483 F.3d 890, 898-99 n.5 (9th Cir. 2007) ("directly contradicts"); *Wyler Summit P'ship v. Turner Broadcasting Sys., Inc.*, 235 F.3d 1184, 1190 (9th Cir. 2000) ("manifestly inconsistent"); *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990) ("directly contradicts") (quoting *Religious Technology*

*Center v. Scott*, 869 F.2d 1306, 1311 (9th Cir. 1989) (Hall, J., dissenting)). The insistence on an absolute contradiction is not surprising given the theoretical basis for the judicial estoppel doctrine. As I wrote in dissent in the *Religious Technology* case:

> The doctrine of judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process. *See* 1B Moore's Federal Practice ¶ .405[8], at 238-42 (2d Ed.1988). "The policies underlying preclusion of inconsistent positions are 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings.' " *Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1215 (9th Cir.1984), *cert. denied*, 469 U.S. 1197, 105 S.Ct. 980, 83 L.Ed.2d 982 (1985) (citations omitted). Judicial estoppel is "intended to protect against a litigant playing 'fast and loose with the courts.' " *Rockwell International Corp. v. Hanford Atomic Metal Trades Council*, 851 F.2d 1208, 1210 (9th Cir. 1988) (citations omitted). Because it is intended to protect the integrity of the judicial process, it is an equitable doctrine invoked by a court at its discretion.

869 F.2d 1306 at 1311.

Here, ironically, it is the majority which plays fast and loose with the facts, as it manufactures the purported conflict in the state's positions. The majority construes the state now to argue that Whaley's claims *absolutely were not* moot under state law, thereby directly contradicting its earlier motion to dismiss. But as explained above, the state need not take this position. It need only persuade us that Whaley had a sufficiently colorable argument that his claims were live that the

Oregon supreme court would likely have agreed with him and given him a hearing on the merits.

I read the state's brief to argue just that. In effect, its position is: "We were able to persuade the state court of appeals to adopt our position that Whaley's petition was moot (probably in large part because he failed to oppose our motion to dismiss). The mootness argument was always a longshot, though, and we only made it because Whaley seems like such a dangerous guy that we wanted to do everything we could to keep him away from young children. In fact, we wouldn't have liked our chances at the state supreme court — if we were a betting state, our money would have been on reversal. So, this court should conclude that the supreme court would probably have given Whaley a hearing on the merits. Since he didn't ask for one in the right way, he procedurally defaulted."[2]

This argument is not manifestly inconsistent or directly contradictory with the state's prior contention that Whaley's claims were moot. Accordingly, the doctrine of judicial estoppel does not apply.

*Russell v. Rolfs* does not suggest otherwise, contrary to the majority's view. In *Russell*, the state of Washington first represented to the federal court that state remedies existed in the form of a "Personal Restraint Petition," then persuaded the state courts — including the state supreme court — that such a petition was procedurally defective because it raised the

---

[2]In its brief, for example, the state argues that:

[P]etitioner could have opposed the state's motion to dismiss, arguing that his case was not moot . . . . Indeed, [P]etitioner was obligated under the exhaustion doctrine to oppose the state's motion and then seek review on that basis by the Oregon Supreme Court. . . . If he had been successful, the Court of Appeals would have considered his claim on the merits. Accordingly, it was petitioner's own choice, not the state's actions or the absence of a corrective state process, that is the cause of his procedural default."

same issues that the petitioner had asserted on direct appeal. 893 F.2d at 1034-35, 1037. When the petitioner returned to federal court with a second habeas petition, we held that the state was estopped from arguing that he was procedurally barred. *Id.* at 1037-38. Estoppel was appropriate because the state's positions were irreconcilable — it first argued a state remedy existed, and then, after the petitioner attempted to avail himself of this remedy, contended that it was foreclosed. As I explained above, no such inconsistency exists in this case.

## IV.

The majority's application of judicial estoppel means that whenever the government of a state convinces one of its lower or intermediate courts that a petition for post-conviction relief is procedurally defective, the petitioner is free to abandon all action at the state level and proceed immediately to federal court. This result does violence to the concerns for comity, federalism, and orderly administration of justice that underlie the procedural bar doctrine. *See Lambrix v. Singletary*, 520 U.S. 518, 523 (1997); *Reed v. Ross*, 468 U.S. 1, 10-11 (1984). I find no support for this view and therefore, respectfully, dissent.