**ORDERED PUBLISHED**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>GUY S. GRIFFITHE,<br>　　　　　　Debtor. | BAP No. CC-25-1059-LGN<br><br>Bk. No. 8:19-bk-12480-TA |
| GUY S. GRIFFITHE,<br>　　　　　　Appellant,<br><br>v.<br><br>JOSEPH SAMEC; BRENDA SAMEC,<br>　　　　　　Appellees. | Adv. No. 8:19-ap-01199-TA<br><br>**OPINION** |

Appeal from the United States Bankruptcy Court
for the Central District of California
Theodor C. Albert, Bankruptcy Judge, Presiding

APPEARANCES

Anerio Ventura Altman argued for appellant; appellees Joseph Samec and
Brenda Samec argued pro se.

Before: LAFFERTY, GAN, and NIEMANN, Bankruptcy Judges.

LAFFERTY, Bankruptcy Judge:

1

## INTRODUCTION

Guy S. Griffithe ("Debtor") appeals the bankruptcy court's judgment of nondischargeability in favor of Joseph and Brenda Samec ("Plaintiffs") under § 523(a)(2) and (a)(19).[1]

Prepetition, Plaintiffs invested their savings in a purported cannabis venture managed in part by Debtor. The venture did not generate revenue, and eventually, Debtor was unable to pay investors and filed for bankruptcy protection.

Plaintiffs lost a significant amount of their investment and sued Debtor, both in state court and bankruptcy court, for fraud and violation of securities laws. But Debtor's troubles did not end there. The Securities and Exchange Commission ("SEC") also sued Debtor, alleging several securities law violations related to the cannabis venture.

Debtor settled with the SEC but continued defending the lawsuits filed by Plaintiffs. The bankruptcy court held a three-day trial on Plaintiffs' claims under § 523(a)(2) and (a)(19). The court explicitly noted in its decision after trial that it was not prescribing any preclusive effect to any other court orders. And the court made independent findings of fact and conclusions of law regarding Debtor's liability.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

After the bankruptcy court issued a Memorandum of Decision, but before entry of a judgment in the nondischargeability action, Plaintiffs moved to dismiss Debtor from their state court action against Debtor and other defendants. The state court granted Plaintiffs' request and ordered dismissal of Debtor from that action.

On appeal, Debtor does not dispute the bankruptcy court's independent findings of fact after trial. Rather, this appeal narrowly focuses on the application of preclusion. Specifically, Debtor asserts that the bankruptcy court should have given preclusive effect to the state court's dismissal. Debtor also argues that the court erred in giving preclusive effect to Debtor's settlement with the SEC.

We AFFIRM.

## FACTS[2]

### A.    Debtor's Business

Prepetition, Debtor formed Renewable Technology Solutions, Inc. ("RTSI") and acted as its sole officer and shareholder.[3] In 2015, RTSI entered into an agreement with SMRB, LLC ("SMRB") to pay SMRB $1.5

---

[2] We have taken judicial notice of the bankruptcy court docket and various documents filed through the electronic docketing system. *See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957-58 (9th Cir. 1989); *Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[3] In its Memorandum of Decision, the bankruptcy court noted that a third party may have been a director of RTSI at one time, but otherwise the record indicates, and Debtor acknowledges in his appellate brief, that Debtor was the sole officer and shareholder of RTSI.

million in exchange for the "right to receive a percentage [49%] of the net income generated by SMRB." The money was purportedly to be used to fund SMRB's cannabis operations in Washington. This joint venture was named Green Acre Pharms.

Debtor's primary role with Green Acre Pharms was to raise money from the investing public. As such, in late 2015, Debtor began selling securities to fund the venture.

As the bankruptcy court set forth in its findings of fact, it remains unclear: (i) whether Debtor ever paid any money to SMRB; (ii) if Debtor did pay any money, whether the funds originated from investors; or (iii) whether SMRB ever owned the real estate and facilities supporting the cannabis project or sold any cannabis product.

## B.    Debtor's Arrangement with Plaintiffs

During the time Debtor solicited investments into Green Acre Pharms, Plaintiffs sought to invest insurance proceeds they received after losing their farm in a fire caused by a lightning strike. Plaintiffs hired a tax preparer who advised Plaintiffs to invest in Debtor's enterprises.

In 2016, Plaintiffs entered into the "Purchase of Shares Interest Agreement" with RTSI. Pursuant to this agreement, Plaintiffs invested $150,000 in RTSI in exchange for a 1.5% "ownership interest" in SMRB.[4]

---

[4] Plaintiffs also entered into a separate transaction with one of Debtor's other companies, Bridgegate Management, whereby Plaintiffs paid $100,000 to fund films produced by a production company with which Debtor is affiliated (the "Bridgegate

Plaintiffs received five quarterly "dividends" from SMRB until the third quarter of 2017, totaling $30,000. Soon thereafter, however, Debtor stopped paying Plaintiffs.

In 2018, after Plaintiffs expressed their displeasure with Debtor, Debtor generated a "Subscription Agreement" that included language classifying Plaintiffs as "Accredited Investors." Debtor also noted in this "Subscription Agreement" that the cannabis business was a "speculative investment which involves a high degree of risk of loss of the entire investment." As noted by the bankruptcy court, there was no evidence that Plaintiffs ever signed the Subscription Agreement, and it is unclear why Debtor executed this agreement two years after Plaintiffs' investment.

## C. Debtor's Bankruptcy Filing and the SEC Action

On June 26, 2019, Debtor filed a chapter 7 petition. Debtor identified Plaintiffs as creditors in his schedules.

Subsequently, the SEC filed a complaint against Debtor, RTSI, Green Acre Pharms, and others, alleging several violations of securities law, including for fraud in the sale of securities, and the sale of securities without proper registration (the "SEC Action").

In its complaint, the SEC alleged that Debtor defrauded at least 25 investors out of $4.85 million in a "securities offering fraud scheme."

Debt"). Although Plaintiffs also requested nondischargeability of the Bridgegate Debt, the bankruptcy court held that the Bridgegate Debt was dischargeable. Plaintiffs do not challenge this conclusion on appeal and, as a result, we need not recount any facts related to this transaction.

Specifically, the SEC alleged that Debtor sold fictitious ownership interests in SMRB promising to invest in SMRB's cannabis business but instead misappropriated investor funds for personal use. The SEC additionally alleged that money paid as dividends to investors was funded in part from money received by other investors in a "Ponzi-like fashion."

In February 2011, Debtor signed a Consent[5] in the SEC Action. Debtor made certain concessions, such as agreeing to disgorge money, "[w]ithout admitting or denying the allegations of the complaint" except as provided in paragraph 11 of the Consent. Paragraph 11 stated in relevant part that:

> [Debtor] . . . stipulates solely for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, that the allegations in the complaint are true, and further, that any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by [Debtor] under the Final Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by [Debtor] of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19).

Consent, p. 4.

After Debtor signed the Consent, the SEC moved for a final judgment. In its order granting the SEC's motion (the "SEC Order"), the

---

[5] Consent decrees are akin to plea bargains with the SEC in that they are "compromises in which the parties give up something they might have won in litigation and waive their rights to litigation." *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 235 (1975).

district court presiding over the SEC Action found that Debtor "defrauded 25 investors of approximately $4.85 million through unregistered offerings of securities in SMRB." The district court further found that Debtor misappropriated investor funds for personal use and operated a "Ponzi-like scheme." As a result, the district court ordered Debtor to disgorge $2,093,336.67 in "ill-gotten gains" and pay a civil penalty of $2,882,539.91.

In accordance with the SEC Order, the district court thereafter entered a final judgment against Debtor (the "SEC Judgment"). The SEC Judgment enjoined Debtor from certain actions, such as future violations of securities laws, and reiterated the monetary disgorgement and penalty award from the SEC Order. As relevant to the present appeal, the SEC Judgment also included the following language:

> The [SEC] may propose a plan to distribute the Fund subject to the Court's approval. Such a plan may provide that the Fund shall be distributed pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002. . . .
>
> Regardless of whether any such Fair Fund distribution is made, amounts ordered to be paid as civil penalties pursuant to this Judgment shall be treated as penalties paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, [Debtor] shall not, after offset or reduction of any award of compensatory damages in any Related Investor Action based on [Debtor's] payment of disgorgement in this action, argue that he is entitled to, nor shall he further benefit by, offset or reduction of such compensatory damages award by the amount of any part of [Debtor's] payment of a civil penalty in this action ("Penalty

7

Offset"). If the court in any Related Investor Action grants such a Penalty Offset, [Debtor] shall, within 30 days after entry of a final order granting the Penalty Offset, notify the [SEC's] counsel in this action and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the [SEC] directs. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this Judgment. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against [Debtor] by or on behalf of one or more investors based on substantially the same facts as alleged in the Complaint in this action.

SEC Judgment, pp. 7-8.

## D.    Plaintiffs' Litigation against Debtor

After Debtor's bankruptcy filing, Plaintiffs filed a complaint against Debtor seeking a determination that the debt owed to them was nondischargeable under § 523(a)(2), (a)(4), (a)(6) and (a)(19). Concurrently, the bankruptcy court granted Plaintiffs' request for relief from the automatic stay for Plaintiffs to pursue their state law claims against Debtor in California state court (the "State Court Action").

In June 2023, the bankruptcy court held a three-day trial on Plaintiffs' nondischargeability complaint. On July 28, 2023, the court issued a Memorandum of Decision after trial. As relevant to this appeal, the bankruptcy court made the following findings: (i) Debtor's cannabis venture was never profitable; (ii) funds paid to investors like Plaintiffs were paid from funds received by other investors, and not from a cannabis

8

venture; (iii) Debtor spent a good portion of the revenue received on personal expenses; and (iv) two years after Plaintiffs invested money with Debtor, Debtor attempted to obtain "unfounded acknowledgements from Plaintiffs that they were 'accredited investors,'" which the bankruptcy court believed betrayed Debtor's scienter. In the Memorandum of Decision, the bankruptcy court explicitly noted that it made these findings without relying on the SEC Order or SEC Judgment.

The bankruptcy court further concluded that, even if Debtor did not make an explicit misrepresentation, § 523(a)(2) also excepted from discharge debts arising from fraudulent omissions, false pretenses, or deceptive conduct. With respect to fraudulent omissions, the bankruptcy court held that Debtor had a duty to disclose material facts to Plaintiffs, such as the fact that the cannabis venture likely violated Washington law and the lack of adequate capitalization in the venture.

Based on all of the above, the bankruptcy court held that Debtor's purported cannabis venture was a "per se fraud" and that the debt owed to Plaintiffs was nondischargeable under § 523(a)(2).

With respect to § 523(a)(19), the bankruptcy court again stated that it was not prescribing any preclusive effect to the SEC Order or SEC Judgment. Rather, the bankruptcy court stated that it would independently enter judgment on Debtor's securities violations.

The court proceeded to hold that Debtor violated both federal and Washington state securities law. Specifically, the court held that Debtor

9

violated 17 CFR § 240.10b-5 by engaging in a Ponzi scheme related to the sale of securities; in so concluding, the bankruptcy court referenced the same findings supporting the court's judgment under § 523(a)(2). The court also held that Debtor violated a Washington statute, Wash. Rev. Code § 21.20.040(1)(a).[6] Based on the foregoing, the court held that the debt owed to Plaintiffs also was nondischargeable under § 523(a)(19).

The bankruptcy court did not immediately enter a judgment in accordance with the Memorandum of Decision. Entry of such judgment was initially delayed when the parties disputed certain aspects of the proposed judgment, such as the applicable interest rate.

During this time, the state court held trial on Plaintiffs' state court causes of action.[7] Although Debtor bases the bulk of his appellate arguments on events that occurred in state court, Debtor did not provide this Panel with a complete record of the state court proceedings. Instead, Plaintiffs submitted additional documents that expanded on Debtor's truncated submission of the state court record.

---

[6] On appeal, Debtor does not dispute the court's independent findings and conclusions with respect to either of these statutes.

[7] Debtor objects to Plaintiffs' Request for Judicial Notice of these state court records. However, Debtor's own arguments on appeal rely on the preclusive effect of such documents. As such, Debtor himself had the obligation to provide a complete record of the pertinent documents from state court, and Debtor cannot both ask the Panel to assess the preclusive effect of the state court's decision and withhold the relevant documents reflecting the state court's decision from the Panel. We GRANT Plaintiffs' Request for Judicial Notice.

Based on what the Panel can tell from the limited record provided by the parties, Debtor argued in his trial brief filed in state court that he should be dismissed from the State Court Action because Plaintiffs already obtained an award in their favor from the bankruptcy court. The minutes from the trial reflect that Plaintiffs agreed with Debtor and orally requested the dismissal of Debtor from the State Court Action. Presumably based on Plaintiffs' request and Debtor's representations that the bankruptcy court had disposed of Plaintiffs' claims, the state court dismissed Debtor from the State Court Action (the "State Court Dismissal").[8]

After the State Court Dismissal, Debtor filed an objection to entry of a judgment by the bankruptcy court, arguing that the State Court Dismissal prohibited the bankruptcy court from entering a judgment based on theories of issue and claim preclusion.

The adversary proceeding docket indicates that one or more hearings were held on Debtor's objection to the entry of the judgment that is the subject of this appeal. It is unclear from the record provided by the parties if the bankruptcy court made any findings or conclusions with respect to Debtor's preclusion arguments. In March 2025, the bankruptcy court entered a judgment in favor of Plaintiffs in accordance with the

---

[8] If the state court provided any independent analysis with respect to this dismissal, it is missing from the record on appeal. Presumably, based on Debtor's own request in his brief before the state court prior to trial, the state court agreed with the parties that the bankruptcy court had disposed of Plaintiffs' claims against Debtor and dismissed Debtor from the State Court Action for that reason.

Memorandum of Decision (the "Nondischargeability Judgment"), along with separate findings of fact and conclusions of law that largely echoed its Memorandum of Decision. Debtor appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). As further discussed below, we have jurisdiction over this appeal under 28 U.S.C. § 158.

## ISSUES

1. Was this appeal timely filed?

2. Did the State Court Dismissal preclude entry of the Nondischargeability Judgment?

3. Did the bankruptcy court erroneously give the Consent, SEC Order, or SEC Judgment preclusive effect?

4. Does the fund created by the SEC Judgment preempt Plaintiffs from pursuing nondischargeability of their claim?

## STANDARDS OF REVIEW

In appeals from judgments under § 523(a), we review the bankruptcy court's findings under the clearly erroneous standard and its legal conclusions de novo. *Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 28 (9th Cir. BAP 2009), *aff'd*, 407 F. App'x 176 (2010). A factual finding is clearly erroneous if the appellate court determines that it is "illogical, implausible, or without support in the record." *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010) (citing *United States v. Hinkson*, 585 F.3d 1247, 1261–62

12

& n.21 (9th Cir. 2009) (en banc)). Under a de novo review, we look at the matter anew, giving no deference to the bankruptcy court's determinations. *Barnes v. Belice (In re Belice)*, 461 B.R. 564, 572 (9th Cir. BAP 2011).

## DISCUSSION

Debtor makes three arguments on appeal in his appellate briefs. First, Debtor asserts that the bankruptcy court was precluded from entering the Nondischargeability Judgment because the state court dismissed Debtor from the State Court Action before the bankruptcy court entered the Nondischargeability Judgment. Second, Debtor argues that the bankruptcy court erred by giving preclusive effect to the Consent, SEC Order, and/or SEC Judgment. Finally, Debtor contends that the reimbursement fund established by the SEC preempted Plaintiffs' pursuit of a nondischargeability judgment in bankruptcy court.

As is evident from this summary, Debtor's arguments before the Panel present limited questions for review. Specifically, Debtor's appeal focuses on the application of preclusion and/or preemption. As we discuss below, neither of these doctrines are applicable to this appeal.

## A.   Debtor timely filed this appeal.

During oral argument, Plaintiffs argued, for the first time during the course of this appeal, that Debtor did not timely file this appeal. Although Plaintiffs did not previously raise the issue of timeliness, the timeliness of an appeal is a jurisdictional matter that we may consider at any time,

whether it was previously raised or not. *See Wilkins v. Menchaca (In re Wilkins)*, 587 B.R. 97, 103 (9th Cir. BAP 2018).

Plaintiffs assert that this appeal was untimely because the Memorandum of Decision, which was entered on July 28, 2023, qualified as the final judgment that triggered the 14-day deadline to file an appeal. In response, Debtor argued the appeal was timely filed because he initiated the appeal within 14 days of entry of the Nondischargeability Judgment, which was entered approximately a year and a half after the Memorandum of Decision, on March 10, 2025. We agree with Debtor.

At oral argument, Plaintiffs referenced two authorities to support their argument: *Slimick v. Silva (In re Slimick)*, 928 F.2d 304 (9th Cir. 1990) and *Belli v. Temkin (In re Belli)*, 268 B.R. 851 (9th Cir. BAP 2001).[9] In *Slimick*, the bankruptcy court entered an order sustaining the trustee's objection to debtors' exemption. 928 F.2d at 305. The order contained the following language: "IT IS THEREFORE ORDERED that the objection . . . is, hereby sustained." *Id.* Subsequently, the debtors requested the court's findings of fact and conclusions of law. *Id.* Approximately five months later, the court issued its findings of fact and conclusions of law, followed by a "Judgment on Order Sustaining Trustee's Objection." *Id.* at 305-06. The debtors filed an

---

[9] *Belli* focused on the issue of whether a party may file an appeal from an order granting partial summary judgment that disposes of some, but not all, of the claims asserted in an adversary proceeding. The parties here do not dispute that the Memorandum of Decision disposed of all remaining claims between the parties. Thus, *Belli* is inapposite.

appeal within 10 days of entry of the judgment. *Id.* at 306. The Panel dismissed the appeal as untimely. *Id.*

In addressing whether the order or the judgment constituted the "final, appealable order" in the case, the Ninth Circuit affirmed the Panel. *Id.* The Circuit stated that "[t]his appeal raises the recurrent problem of which of two documents filed by a court, both arguably pronouncing the court's final order in a matter, constitutes the final, appealable order." *Id.* at 306-07.

"A disposition is final if it contains a **complete** act of adjudication, that is, a full adjudication of the issues at bar, and clearly evidences the judge's intention that it be the court's final act in the matter." *Id.* at 307 (internal quotations omitted). The Circuit first held that the order sustaining the trustee's objection was a complete act of adjudication:

> The Order in the present case constituted a complete act of adjudication. The decision it expressed, sustaining the trustee's objections to the debtors' amended exemption claim, finally resolved all issues regarding the claimed exemption. It is irrelevant that the Order, unlike the later Judgment, did not expressly deny the debtors' amended exemption claim; the grant of the objection obviously and necessarily constituted such denial.

*Id.* In making this determination, the Circuit concluded that "[t]he absence of accompanying findings and conclusions" under Civil Rule 52(a) "did not prevent the Order from fully adjudicating the objection." *Id.*

15

Next, the Circuit considered whether the order satisfied the second requirement for finality, namely, "that the judge intended [the order] be final." *Id.* at 308. "Evidence of intent consists of the Order's content and the judge's and parties conduct." *Id.* (citations omitted). In holding that the order satisfied this second requirement, the Circuit analyzed the bankruptcy court's intent by assessing the order on its face as well as considering relevant context:

> The Order's content coupled with the judge's prior statements at the hearing support the view that he intended the Order be final. At the hearing, he advised the parties that he would settle the dispute only by sustaining or overruling the objection, and proceeded to file the Order sustaining the objection.
>
> Appellants urge that the judge intended that the Order merely state his intended decision, or that its finality be contingent upon a party's request for findings. We disagree. On its face, the Order does not refer to any contingency upon which finality depends, and hence is distinguishable from many of our precedents in this area. The judge's remarks at the hearing—that he would have findings prepared if a party wished to appeal—did not clearly state the intention urged. While the judge could have filed an order merely stating his intended decision or conditioning finality of his decision on entry of findings, or could have verbally attached such qualifications to the Order as it stood, he did none of these. We presume that a facially final order does not constitute a statement of intended decision or conditional disposition unless the court clearly states that it is such. That the judge set no deadline for submission of a request for findings shows the

> improbability of his having intended that the Order's finality depend upon such a request, for this could have rendered the Order indefinitely interlocutory.
>
> Although a formal judgment is prima facie the final decision and we do not assume that a judge did a useless act or acted indirectly to extend the appeal time, the evidence shows that the judge intended that the Order be final.

*Id.* at 308–09 (cleaned up).

*Slimick* stands for the proposition that an order may qualify as the court's final judgment or decree resolving a matter even if there are no separately issued findings of fact and conclusions of law under Civil Rule 52, and even where the court later enters a different order or judgment disposing of the same matter. As explained by the Circuit, the relevant inquiry is not which order or judgment was entered last, but rather which of the court's orders or judgments completely adjudicates the issues and **clearly evidences the judge's intention that it be the court's final act**. In *Slimick*, the order sustaining the trustee's objection met all the criteria of a court's final act: on its face, it disposed of all of the issues and left nothing for the court to do. *Slimick* also implicitly drew a distinction between a court's findings of fact and conclusions of law for purposes of Civil Rule 52, and a court's final judgment (or order, as the case may be).

Here, although the Memorandum of Decision did dispose of all of the substantive issues after trial (leaving only the exact calculation of damages, which issue does not seem to have been especially complex), unlike *Slimick*,

17

the Memorandum of Decision explicitly referred to itself as the court's findings of fact and conclusions of law under Civil Rule 52, and not as the court's final order or judgment under Civil Rule 54 or 58.

In addition, the Memorandum of Decision explicitly contemplated that there would be a separate judgment forthcoming. *See* Memorandum of Decision, p. 31 ("This memorandum shall serve as the writing required under [Civil Rule] 52(a)(1). Plaintiffs shall submit a form of judgment consistent with this memorandum."). Thus, the Memorandum of Decision does not satisfy the second requirement set forth in *Slimick,* that the document at issue clearly evidence the judge's intention that it be the court's final act. By its own terms, the Memorandum of Decision contemplated that a separate judgment would be the court's final act. Nothing in the Memorandum of Decision otherwise indicates that the court intended the Memorandum of Decision to start the clock for purposes of appeal.

Moreover, in adversary proceedings such as this one, the Civil Rules clearly differentiate between a court's findings of fact and conclusions of law, which are governed by Civil Rule 52, and a court's final judgment, which is governed by Civil Rules 54-58. That the drafters of the Civil Rules did not intend findings of fact and conclusions of law to be categorized as judgments is evident from the fact that Civil Rule 52 is categorized under the heading "TRIALS," whereas the Civil Rules governing judgments are separately categorized under the heading "JUDGMENT." *See also In re*

*Slimick*, 928 F.2d at 308-09 (generally "a formal judgment is prima facie the final decision" and courts do not assume that judges committed a useless act by entering a judgment unless "the evidence shows that the judge intended that" another order be final).

There is no indication that the bankruptcy court intended the Memorandum of Decision to be a final judgment. Neither the Memorandum of Decision nor anything else in the record reflects an intention by the bankruptcy court to deviate from the general requirement that a separate formal judgment be entered in adversary proceedings. In fact, both the Memorandum of Decision and the record reflect the opposite: the Memorandum of Decision explicitly noted the court's intent to comply with Civil Rule 58's requirement for entry of a separate judgment, and the parties spent considerable effort after entry of the Memorandum of Decision disputing the final form of the judgment.

Under these circumstances, the requirements of *Slimick* were not satisfied. Requiring appellants to appeal after issuance of a memorandum of decision but prior to entry of a judgment, without any showing that the court intended such an act, would essentially erase Civil Rule 58 from the Civil Rules.

Based on the foregoing, this appeal was timely filed, and the Panel has jurisdiction over this matter.

**B.    The State Court Dismissal did not preclude the bankruptcy court from entering the Nondischargeability Judgment.**

Debtor's primary argument on appeal is that the State Court Dismissal precluded entry of the Nondischargeability Judgment.

Although Debtor's appellate briefs expressly rely on a theory of issue preclusion, also known as collateral estoppel, Debtor occasionally conflates the doctrines of issue preclusion and claim preclusion. Prior to addressing Debtor's arguments, we discuss both doctrines in more detail.

Claim preclusion, also known as res judicata, "treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same 'claim' or 'cause of action.'" *Robi v. Five Platters, Inc.*, 838 F.2d 318, 321 (9th Cir. 1988) (citation omitted). "Claim preclusion 'prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'" *Id.* at 322 (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979)).

Issue preclusion, or collateral estoppel, "prevents relitigation of all 'issues of fact or law that were actually litigated and necessarily decided' in a prior proceeding." *Id.* (quoting *Segal v. Am. Tel. & Tel. Co.*, 606 F.2d 842, 845 (9th Cir. 1979)).

In determining the preclusive effect of a state court judgment, the bankruptcy court must apply the preclusion law of the state in which the judgment was issued. *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245

20

(9th Cir. 2001). Here, the State Court Dismissal that Debtor argues is preclusive was entered in California.

Under California law, "[c]laim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit. If claim preclusion is established, it operates to bar relitigation of the claim altogether." *Gray v. La Salle Bank, N.A.*, 95 Cal. App. 5th 932, 949 (2023) (cleaned up), *as modified on denial of reh'g* (Sept. 27, 2023).

Notwithstanding California law on claim preclusion, which would generally apply to bar relitigation of certain claims in bankruptcy court if such claims were resolved by a California court, claim preclusion does not apply to nondischargeability proceedings. *See Brown*, 442 U.S. 127; *Archer v. Warner*, 538 U.S. 314 (2003).

> Because nondischargeability of a debt is an entirely separate determination with its own elements under § 523 which require more than the establishment of liability, principles of *res judicata* do not apply (i.e. no determination of nondischargeability was made). Collateral estoppel, on the other hand, would apply to individual fact determinations made by the state court that were actually litigated.

*Berr v. Fed. Deposit Ins. Corp. (In re Berr)*, 172 B.R. 299, 305 n.4 (9th Cir. BAP 1994) (citing *Brown*, 442 U.S. 127); *see also Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 873 (9th Cir. 2005) ("[A] preexisting judgment does not have

preclusive effect on the bankruptcy court's determination of dischargeability.").[10]

Issue preclusion, which does apply in nondischargeability proceedings, requires that: (1) the issue sought to be precluded from relitigation is identical to that decided in a former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the decision in the former proceeding is final and on the merits; and (5) the party against whom preclusion is sought was the same as, or in privity with, the party to the former proceeding. *Lucido v. Super. Ct.*, 51 Cal.3d 335, 341 (1990).

"The party asserting preclusion bears the burden of establishing the threshold requirements." *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 462 (9th Cir. BAP 2015). "This means providing 'a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action.'" *Id.* (quoting *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (9th Cir. BAP 1995), *aff'd*, 100 F.3d 110 (9th Cir. 1996)). "Any reasonable doubt

---

[10] For purposes of § 523(a)(2), the issue is jurisdictional: bankruptcy courts have exclusive jurisdiction over claims under § 523(a)(2), and thus state court judgments of fraud cannot preclude bankruptcy courts from presiding over a claim over which only bankruptcy courts may preside. § 523(c)(1); *see also Ackerman v. Eber (In re Eber)*, 687 F.3d 1123, 1128 (9th Cir. 2012) (holding that bankruptcy courts "have exclusive jurisdiction to determine dischargeability of debts under §§ 523(a)(2) (fraud and deception); (a)(4) (fiduciary fraud, embezzlement, or larceny); and (a)(6) (willful and malicious injury to person or property).").

as to what was decided by a prior judgment should be resolved against allowing the [issue preclusive] effect." *In re Kelly*, 182 B.R. at 258.

In reviewing the elements above, Debtor did not meet his burden of establishing that either claim or issue preclusion barred the bankruptcy court's entry of the Nondischargeability Judgment.

First and foremost, Debtor fell far short of meeting his burden to establish preclusion by failing to submit a complete record of either the state court or bankruptcy court proceedings. Debtor neither provided a full record of the state court proceedings[11] nor any oral or written rulings by the bankruptcy court addressing the preclusion issues raised by Debtor in bankruptcy court. This fact alone is enough for this Panel to dispose of Debtor's claim and issue preclusion arguments.

And in any event, the (slim) record before the Panel also does not establish Debtor's entitlement to either claim or issue preclusion. With respect to claim preclusion, the state court did not, and could not, decide a claim of nondischargeability under § 523. As such, under *Brown* and *Archer*, the State Court Dismissal would not preclude the bankruptcy court's consideration of nondischargeability claims. As for issue preclusion, the state court records reflect that the state court did not actually litigate or necessarily decide any issues concerning Debtor. The state court merely

---

[11] In fact, as noted above, Debtor opposed Plaintiffs' submission of additional documents from state court.

dismissed Debtor after both Plaintiffs and Debtor requested such dismissal based on the bankruptcy court's disposal of similar issues.

Although we may resolve Debtor's arguments based solely on the above analysis, we believe the unique facts and circumstances of this case require a more comprehensive discussion of the policy behind preclusion doctrines.

Despite the differences between the requirements for issue and claim preclusion highlighted above, similar policy considerations undergird the doctrines of claim and issue preclusion.

The purpose of claim preclusion is to "preclude[] piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief." *Mycogen Corp. v. Monsanto Co.,* 28 Cal. 4th 888, 897 (2002) (cleaned up).

Issue preclusion promotes similar goals, and California law **mandates** consideration of policy before allowing application of the doctrine. "California . . . places an additional limitation on issue preclusion: courts may give preclusive effect to a judgment 'only if application of preclusion furthers the public policies underlying the doctrine.'" *In re Plyam*, 530 B.R. at 462 (quoting *In re Harmon*, 250 F.3d at 1245). The public policies that form the basis for the doctrine of issue preclusion are: (1) the preservation of the integrity of the judicial system; (2) promotion of judicial economy; and (3) the protection of litigants from harassment by vexatious litigation. *Lucido,* 51 Cal.3d at 343.

24

Given these policy considerations, application of either claim or issue preclusion in the manner Debtor requests would undermine the purpose of these doctrines. First, application of either doctrine would in no way preclude piecemeal litigation or prevent judicial waste; to wit, by the time the state court dismissed Debtor from the State Court Action, the bankruptcy court already had held a three-day trial and issued detailed findings of fact and conclusions of law via the Memorandum of Decision. In fact, application of either doctrine in this case would promote judicial waste by essentially nullifying the entirety of the bankruptcy court's and parties' participation in a full trial of Plaintiffs' claims, as well as the bankruptcy court's lengthy Memorandum of Decision and years of pretrial litigation between the parties in bankruptcy court.

Second, and crucially, application of either doctrine in this matter would pervert, instead of preserve, the integrity of the judicial system. The bankruptcy court, after conducting a full and fair trial of Plaintiffs' claims, concluded that Debtor behaved fraudulently in his dealings with Plaintiffs. Long after the court reached this conclusion, Debtor sought to excuse himself from state court by notifying the state court that a **judgment had already been entered against him in bankruptcy court.** The state court seemingly agreed and dismissed Debtor, not because it analyzed the merits of Plaintiffs' claims against Debtor but because such merits had already been assessed and determined by a different court.

Despite the rote nature of the State Court Dismissal, Debtor then sought to use the State Court Dismissal to invalidate the bankruptcy court's findings and conclusions disposing of Plaintiffs' claims. In doing so, Debtor misrepresented facts to both the state court and the bankruptcy court. To the state court, Debtor falsely asserted that he sought dismissal because a judgment had already been entered against him in bankruptcy court. Notwithstanding that position, Debtor then misrepresented to the bankruptcy court—and later, to this Panel—the nature of the dismissal in state court.[12] To use preclusion doctrines in this fashion would not only degrade judicial integrity but would promote chicanery.

In light of the above, we also believe Debtor's arguments are barred by the doctrine of judicial estoppel.[13] "Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a

---

[12] Aside from Debtor's generally inconsistent positions taken before the state court and the bankruptcy court, Debtor also represented to this Panel that the state court granted Debtor's motion for non-suit. The record contradicts this assertion. **Plaintiffs** moved to dismiss Debtor from the State Court Action, presumably based on the parties' seeming consensus at the time that the bankruptcy court's Memorandum of Decision resolved Plaintiffs' claims against Debtor, and the state court granted **Plaintiffs'** request to dismiss Debtor.

[13] Although Plaintiffs raised the doctrine of judicial estoppel before the bankruptcy court, the record is devoid of any findings or conclusions by the bankruptcy court with respect to judicial estoppel. In addition, neither party addressed judicial estoppel on appeal. Nevertheless, judicial estoppel is "an equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). Judicial estoppel "is intended to protect the integrity of the judicial process by preventing a litigant from playing fast and loose with the courts." *Whaley v. Belleque*, 520 F.3d 997, 1002 (9th Cir. 2008).

party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Whaley v. Belleque,* 520 F.3d 997, 1002 (9th Cir. 2008). Courts consider three elements when deciding whether judicial estoppel should be applied: "(1) whether a party's later position is 'clearly inconsistent' with its original position; (2) whether the party has successfully persuaded the court of the earlier position, and (3) whether allowing the inconsistent position would allow the party to 'derive an unfair advantage or impose an unfair detriment on the opposing party.'" *United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008) (quoting *New Hampshire v. Maine*, 532 U.S. at 750-51).

Here, Debtor took inconsistent positions in state court and bankruptcy court. Debtor argued before the state court that he should be dismissed because the bankruptcy court already had disposed of Plaintiffs' claims against him. Debtor was successful in that the state court did dismiss him from the State Court Action. Later, Debtor argued to the bankruptcy court—and now argues to this Panel—that the State Court Dismissal precluded any disposition of Plaintiffs' claims by the bankruptcy court. For the same reasons highlighted above, and to protect the integrity of this Panel, Debtor should now be estopped from arguing preclusion.

For all the foregoing reasons, we reject Debtor's argument that either claim or issue preclusion prevented the bankruptcy court from entering the Nondischargeability Judgment.

**C.** **The bankruptcy court explicitly held that the Consent, SEC Order, and SEC Judgment did not have any preclusive effect.**

Debtor next argues that the bankruptcy court "abused its discretion in determining there was privity between the Plaintiffs and the parties" involved in the SEC Action. Specifically, Debtor emphasizes that the bankruptcy court lacked any basis to conclude that one of the Plaintiffs was identified as "Investor J" in the SEC Action.[14]

Yet, the bankruptcy court plainly stated in the Memorandum of Decision that it was not relying on doctrines of preclusion to reach its conclusions under § 523(a)(2) and (a)(19). And although the bankruptcy court noted that its findings were in accord with the Consent and the SEC Order, the court explicitly proceeded to make its own findings with respect to both claims.

Debtor focuses on the court's "finding" that one of the Plaintiffs was "Investor J." Although the court noted that it was "very likely that Plaintiff was 'Investor J,'" it went on to state that "more effort [was] needed to properly" use preclusion in this case, and proceeded to make its own findings and conclusions based on the evidence presented at trial. Thus, even if the court made a finding that one of the Plaintiffs was Investor J, as opposed to merely speculating that it was "likely" one of the Plaintiffs was

---

[14] At trial, presumably in an attempt to prove that Plaintiffs were two of the anonymous 25 investors referenced in the SEC's complaint against Debtor, Plaintiffs testified that Mr. Samec was identified as "Investor J" in the SEC's filings.

Investor J, such a finding would be harmless error because the court did not rely on it to reach its conclusions of law.[15]

Crucially, Debtor does not dispute the bankruptcy court's independent findings on appeal. Except for Debtor's disagreement with the court regarding "Investor J," Debtor does not contend that any of the bankruptcy court's other findings of fact were erroneous, let alone make any argument that the court's findings were "illogical, implausible, or without support in the record." *In re Retz*, 606 F.3d at 1196.

Given that Debtor does not dispute the court's independent findings supporting the conclusion that Debtor engaged in a fraudulent scheme and violated federal and state securities laws, Debtor has not identified any error on appeal as to either § 523(a)(2) and (a)(19).

**D.** **Debtor's arguments regarding collection or enforcement of the debt owed to Plaintiffs is irrelevant to the question of nondischargeability.**

Finally, Debtor argues that the SEC Order and SEC Judgment preempt Plaintiffs' efforts to collect on the Nondischargeability Judgment

---

[15] In any event, Debtor himself admitted at trial that Plaintiffs were two of the investors involved in the SEC Action. *See* Trial Tr. 30:2-19, June 22, 2023 ("Q: What were the names of the other investors that the SEC alleges you defrauded? . . . A: There was Mr. Bagot, **Mr. and Mrs. Samec** . . . .") (emphasis added). Nevertheless, Plaintiffs' involvement in the SEC Action (or lack thereof) is irrelevant. Neither this Panel nor the bankruptcy court relied on concepts of privity or preclusion to reach a decision.

29

because the SEC already created a fund for the purpose of reimbursing investors pursuant to 15 U.S.C. § 7246.[16]

There are several problems with Debtor's argument. First, 15 U.S.C. § 7246 simply provides that any civil penalty assessed against a person for violating securities laws should be added to a fund established for the benefit of victims. The statute is completely silent regarding any preemption of investors' alternative collection methods. Nothing in the statute prevents investors from separately suing entities pursued by the SEC or from attempting to collect on their judgments from sources other than the fund established by the SEC.

Second, the SEC Judgment clearly contemplated that investors may separately sue Debtor in a different forum. The SEC Judgment explicitly referenced "Related Investor Actions" that it defined as "private damages action[s]" brought by investors against Debtor. There is no other language in the SEC Judgment that could be interpreted to preclude or preempt investors from filing their own lawsuits or collecting damages directly from Debtor.

Finally, the function of the Nondischargeability Judgment is simply to except the debt owed to Plaintiffs from the discharge injunction. To the extent Plaintiffs' future actions to enforce the Nondischargeability

---

[16] Of course, Debtor's concern that the SEC will pay Plaintiffs from its fund contradicts Debtor's assertion that Plaintiffs were not part of the group of investors identified in the SEC Action.

Judgment contravene the law, Debtor may raise those issues separately in an appropriate forum.

## CONCLUSION

For the reasons set forth above, we AFFIRM.